BRANCART & BRANCART
CHRISTOPHER BRANCART, ESQ., SBN 128475
Email: cbrancart@brancart.com
LIZA CRISTOL-DEMAN, ESQ., SBN 190516
Email: lcristoldeman@brancart.com
P.O. Box 686
Pescadero, California 94060
Telephone: (650) 879-0141
Facsimile: (650) 879-1103

LEGAL AID SOCIETY OF SAN DIEGO, INC.
DANIELLE TAILLEART, ESQ., SBN 306598
Email: danielle@lassd.org
HILARY SCHWARTZ, ESQ., SBN 326009
Email: hilarys@lassd.org
110 South Euclid Avenue,
San Diego, California 92114
Telephone: (619) 471-2613
Facsimile: (619) 471-2632

Attorneys for Plaintiff, DENISSE RAMOS GONZALEZ

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| DENISSE RAMOS GONZALEZ, | ) | Case No: **'22CV1348 LL    MSB** |
|---|---|---|
| Plaintiff, | ) | **COMPLAINT FOR MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF** |
| vs. | ) | **DEMAND FOR TRIAL BY JURY** |
| MENDEZ PROPERTY COMPANY LLC; MARIO ESTEVAN MENDEZ; | ) | |
| Defendants. | ) | |

## I.  INTRODUCTION

1. Plaintiff Denisse Ramos Gonzalez ("Ms. Ramos") brings this action against her former landlord, Mendez Property Company LLC and Mario Estevan Mendez, for unlawfully discriminating against Ms. Ramos and terminating Ms. Ramos' tenancy based on her sex or gender, or her status as a victim of domestic violence, or both. Ms. Ramos brings this action to enforce her rights under the federal Fair Housing Act, the California Fair Employment and Housing Act, and the California Unruh Civil Rights Act.

## II.  JURISDICTION AND VENUE

2.  This Court has jurisdiction over Ms. Ramos' claims pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 3601 *et seq*; §3613 (Fair Housing Act), and 28 U.S.C. § 1367 (supplemental jurisdiction).

3.  Venue is proper in the judicial district pursuant to 28 U.S.C. §1391(b) as the events giving rise to Plaintiff's claims occurred within this District.

## III. JURY DEMAND

4.  Ms. Ramos demands a jury trial on each and every claim to which she is so entitled.

## IV. PARTIES

5.  Plaintiff Denisse Ramos Gonzalez ("Ms. Ramos") was an authorized occupant at the apartment located at 527 Florida Street ("Florida Street Apartments"), Apartment 8, in Imperial Beach, California until March 3, 2022. Ms. Ramos lived in the Florida Street Apartments with her three minor children and her now-estranged husband for approximately eight years, when she was forced to move out of the apartment by Defendants.

6.  Defendant Mendez Property Company ("MPC") is a California limited liability corporation. At all times relevant to this action, MPC served as the manager of the Florida Street Apartments on behalf of the owner. MPC is a business establishment within the meaning of the Unruh Act, Civil Code section 51, et seq.

7.  According to public records recorded with the San Diego County Recorder's Office, Defendant Mario Estevan Mendez ("Mendez") has been the owner of the Florida Street Apartments at all times relevant to this action, and remains the owner. Mendez also owns and operates MPC.

8.  The Florida Street Apartments and each of its units constitute dwellings within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b), and housing accommodations within the meaning of the California Fair Employment and Housing Act, Government Code § 12927 (d). The Florida Street Apartments also constitute a business establishment within the

**COMPLAINT FOR MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF; DEMAND FOR TRIAL BY JURY**

meaning of the Unruh Act, Civil Code § 51, *et seq.*

## V. <u>FACTS</u>

**A. Ms. Ramos's co-tenant and husband physically assaults her in her dwelling unit.**

9.   On August 29, 2021, Ms. Ramos' husband and co-tenant, Felipe Flores Ramirez ("Ramirez"), physically assaulted her in their apartment at the Florida Street Apartments. Following the assault, Ms. Ramos told Ramirez that she wanted him to move out of the apartment.

10.  On the following day, on or about August 30, 2021, Ramirez moved out of the Florida Street Apartments. Ms. Ramos and her three minor children remained.

11.  On the same date, August 30, 2021, Ms. Ramos sought and obtained from the Superior Court of California, County of San Diego, a temporary restraining order against Ramirez. The order prohibited Ramirez from contacting Ms. Ramos or coming within 100 feet of her. The order indicated that Ramirez had moved out of the residence on August 30, 2021 and allowed him to return only with law enforcement or some agreed upon third party to collect his personal belongings.

**B. Defendants threaten to evict Ms. Ramos and take other adverse action after she informs defendants of the restraining order.**

12.  Sometime during the first week of September 2021, Ms. Ramos orally notified Defendant Mendez that she had obtained a temporary restraining order barring Ramirez from returning to the property.

13.  On or about September 17, 2021, Defendant Mendez presented Ms. Ramos with a written acknowledgment that the "primary tenant" was no longer residing at the Florida Street Apartments and demanded her signature under penalty of perjury. Ms. Ramos did not sign the acknowledgment.

14.  On or about September 18, 2021, Mendez again approached Ms. Ramos and demanded that

**COMPLAINT FOR MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF; DEMAND FOR TRIAL BY JURY**

she sign the acknowledgment stating under penalty of perjury that the "primary tenant" was no longer residing at the Florida Street Apartments. He stated that he had attempted to reach Ramirez by phone, but that Ramirez did not answer. Mendez told Ms. Ramos that she had no tenancy rights and would have to sign the form and move out. Ms. Ramos told him that he would have to file an unlawful detainer action if he wanted her to move out. He responded that he needed her to sign the acknowledgment in order to start the unlawful detainer process. Ms. Ramos stated that she would not sign the acknowledgement and that, moving forward, he would receive rent payments if he participated in the emergency rental assistance program. Mendez had already received rent for September 2021.

15. Later the same day, on or about September 18, 2021, Defendant Mendez served Ms. Ramos with a 60-Day Notice to Move Out, which he personally signed and dated September 17, 2021. The notice stated, "This notice, under the provisions of Section 1946 of the California Civil Code, requires no specified reason. However, grounds for this notice IF required by a local ordinance are as follows: 1) tenants' safety and security due to restraining order[;] 2) primary tenant no longer living in apartment[.]"

16. Ms. Ramos' Emergency Rental Assistance Application was officially submitted to the County of San Diego on September 23, 2021.

17. On or about October 7, 2021, Mendez personally served Ms. Ramos with a 3-Day Notice to Pay Rent or Move Out, which Mendez had signed. At the time, in California, the COVID-19 Rental Housing Recovery Act, Cal. Civ. Proc. Code § 1179.08, barred evictions for non-payment in certain circumstances such as when an eligible tenant had applied for Emergency Rental Assistance. At the time that Mendez served the 3-Day Notice to Pay Rent or Move Out, Ms. Ramos was eligible and had applied for Emergency Rental Assistance from San Diego County Rental Assistance Funds.

**COMPLAINT FOR MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF; DEMAND FOR TRIAL BY JURY**

18. Ms. Ramos and her children continued to occupy Apartment 8 in the Florida Street Apartments while her application for Emergency Rental Assistance was pending.

19. On or about December 28, 2021, Defendant Mendez served Ms. Ramos with a document entitled "30- Day Notice to Change the Terms of Your Rental Agreement," which Mendez had personally signed. The Notice stated that, "thirty (30) days after service upon you of this notice or beginning February 1, 2022, whichever is later, the terms of your rental agreement for the above-described property are hereby changed as follows: termination of parking space agreement[,] spaces A&B." This notice effectively took away Ms. Ramos' parking space at the Florida Street Apartments.

20. On or about January 24, 2022, Defendant Mendez approached Ms. Ramos at the Florida Street Apartments. He told her that he had received Emergency Rental Assistance payments covering her rent through February 2022. He then stated that he knew she was in a difficult situation, but that was not his problem because he had bills to pay. Ms. Ramos asked Defendant Mendez if she could stay if she got a job. Defendant Mendez told Ms. Ramos that rent would be increasing and that he needed to rent the unit to someone who was "more qualified," or words to that effect in Spanish. He ended their conversation by stating that she had to move out of the Florida Street Apartments by the end of February 2022.

21. On or about January 25, 2022, Ms. Ramos received a letter on MPC letterhead, dated January 25, 2022, acknowledging that MPC had received payment of Emergency Rental Assistance Funds on her behalf, covering past due and current rental amounts through February 2022. In the letter, MPC demanded that Ms. Ramos tender an additional payment of $65.00 by February 1, 2002.

22. On the same date, on or about January 25, 2022, Defendant Mendez served Ms. Ramos with a document entitled "30-Day Notice to Change the Terms of Your Rental Agreement,"

stating that "monthly rent shall be increased from $1,530.00 per month to $1,665.00 per month, an increase of $135.00 per month."

23. At no time did defendants inquire about Ms. Ramos' ability to continue to reside in her dwelling and pay rent without her abusive husband. At no time did defendants inquire about whether Ms. Ramos' husband would continue to pay for the unit, for example, or whether Ms. Ramos had alternative sources of income. In fact, Ms. Ramos was eligible to continue receiving Emergency Rental Assistance even after March 1, 2022, when defendants forced her to move out.

24. Whether Ms. Ramos could afford to continue to reside in her dwelling after her abuser and co-tenant moved out was a decision that she alone was in a position to make. In ordering Ms. Ramos to move out after her abuser left the unit, defendants relied on stereotypes and assumptions based on sex and gender in general, and stereotypes and assumptions about women who are survivors of intimate partner violence in particular.

**C. Ms. Ramos moves out as a result of defendants' harassment and discriminatory conduct.**

25. Based on Mendez's demand that Ms. Ramos move out by the end of February 2022, and believing that she had no other alternative, Ms. Ramos packed her family's belongings and moved out of the Florida Street Apartments on or about March 3, 2022. She could not locate a suitable alternative dwelling and lived in her car for a period of time. She temporarily lived in a confidential shelter. She has not yet located permanent housing for herself and her children.

**D. Defendants' policies and practices have an unlawful disparate impact on women based on their sex or gender.**

26. After Ms. Ramos notified defendants that her husband had assaulted her and that she had

**COMPLAINT FOR MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF; DEMAND FOR TRIAL BY JURY**

obtained a restraining order, defendants intimidated and threatened Ms. Ramos with eviction, harassed her for rental amounts that were paid or scheduled to be paid with emergency rental assistance payments, retaliated by raising the monthly rental amount and taking away her parking space, and forced Ms. Ramos to vacate her dwelling.

27. Defendants took adverse action against Ms. Ramos because she was the victim of intimate partner and domestic violence, with the purpose or effect of discriminating against women based on sex or gender in violation of the Fair Housing Act and related laws.

28. The vast majority of victims of domestic violence in the United States, including victims of intimate partner violence,[1] are women.

29. The CDC's 2015 National Intimate Partner and Sexual Violence Survey (NISVS) Data Brief indicates that nearly 1 in 4 women (25.1%) and approximately 1 in 10 men (10.9%) in the U.S. report having experienced sexual violence, physical violence, and/or stalking by an intimate partner with at least one ill-effect related to that experience. *See* Smith, S.G., Zhang, X., Basile, K.C., Merrick, M.T., Wang, J., Kresnow, M., Chen, J. (2018), The National Intimate Partner and Sexual Violence Survey (NISVS): 2015 Data Brief – Updated Release. Atlanta, GA: National Center for Injury Prevention and Control, Centers for Disease Control and Prevention.

30. Among victims of intimate partner violence (IPV) in the form of sexual violence, physical violence, and/or stalking by an intimate partner, about 69% of female victims and 33% of male victims report that IPV results in safety concerns, fear, injury, PTSD symptoms,

---

[1] Intimate partner violence ("IPV") is a term that is more specific than the more commonly used term, "domestic violence." It is defined by the CDC as "abuse or aggression that occurs in a romantic relationship. 'Intimate partner' refers to both current and former spouses and dating partners." https://www.cdc.gov/violenceprevention/intimatepartnerviolence/fastfact.html (last visited August 17, 2022)

**COMPLAINT FOR MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF; DEMAND FOR TRIAL BY JURY**

economic loss, and the need for law enforcement intervention. *See* D'Inverno, A.S., Smith, S.G., Zhang, X., Chen, J. (2019), The Impact of Intimate Partner Violence: A 2015 NISVS Research-in-Brief. Atlanta, GA: National Center for Injury Prevention and Control, Centers for Disease Control and Prevention.

31. Intimate partner violence imposes significant costs for the victim over her lifetime, as well as for the economy. According to the CDC's NISVS Data Brief, the average individual cost of intimate partner violence is $103,767 for women and $23,414 for men. See National Center for Injury Prevention and Control, Division of Violence Prevention, Fast Facts: Preventing Intimate Partner Violence, Center for Disease Control and Prevention.[2]

32. Requiring a tenant to move out because she has been the victim of intimate partner violence, reported an incident of intimate partner violence, or obtained an intimate partner violence restraining order against a co-tenant has a disparate impact on women. Defendants' policy or practice of threatening such tenants with eviction and demanding that they move out results in disproportionate penalties on women and jeopardizes their safety and well-being. Women who believe they will be subject to eviction if they report their abusive co-tenant to the police may decline to make such a report because they fear losing their housing or their children's housing, thereby limiting their ability to make a life-saving decision by calling law enforcement or requesting a restraining order. *See* Johnson, Margaret, A Home with Dignity: Domestic Violence and Property Rights, 2014 B.Y.U. L. Rev. 1, 8, 35 (2014).

33. Any legitimate business purpose served by defendants' practice or policy of forcing victims of domestic violence to move out of their units could be achieved through less

---

[2] Available at: https://www.cdc.gov/violenceprevention/intimatepartnerviolence/fastfact.html (last visited November 2, 2021)

discriminatory means that do not result in disproportionate penalties against women by rendering them unsheltered or unsafe from their abuser.

**E. Injuries.**

34. As a result of the unlawful and discriminatory housing practices alleged herein, Ms. Ramos suffered damages, including loss of her housing, economic damages, emotional and psychological distress, including manifestations in physical symptoms, and violation of her civil rights.

35. The acts and failures of Defendants were taken in reckless disregard of Ms. Ramos' protected rights, including her physical safety and her rights under the Fair Housing Act. Defendants' conduct was also intentional, wanton, malicious, oppressive, reckless, and callously indifferent to the rights of Ms. Ramos, thus entitling her to an award of punitive damages against defendants under the Fair Housing Act and the California Fair Employment and Housing Act.

36. There now exists an actual controversy between the parties regarding defendants' duties under federal and state fair housing laws. Accordingly, plaintiff is entitled to declaratory relief.

37. Unless enjoined, defendants will continue to engage in the unlawful acts and the pattern, practice, or policy of discrimination described above. Plaintiff has no adequate remedy at law. Plaintiff is now suffering and will continue to suffer irreparable injury from defendants' acts and their pattern or practice of discrimination unless relief is provided by this Court. Accordingly, Plaintiff is entitled to injunctive relief.

**VI. CLAIMS**

*A.* **FIRST CLAIM: VIOLATION OF THE FAIR HOUSING ACT, 42 U.S.C. § 3601**

*et seq.*

38. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

39. Defendants injured plaintiff in violation of the Fair Housing Act by committing the following discriminatory housing practices, as defined by the Fair Housing Act:

    a.  Evicting a person or otherwise making housing unavailable because of sex or gender, in violation of 42 U.S.C. § 3604(a) and 24 C.F.R. § 100.60(b)(5);

    b.  Subjecting a person to harassment because of sex or gender that causes the person to vacate a dwelling, in violation of 42 U.S.C. § 3604(a) and 24 C.F.R. § 100.60(b)(7);

    c.  Imposing different terms, conditions, or privileges relating to the rental of a dwelling or denying or limiting services or facilities in connection with the rental of a dwelling because of sex or gender, in violation of 42 U.S.C. § 3604 (b) and 24 C.F.R. § 100.65 (a) and (b);

    d.  Making, printing, or publishing notices or statements with respect to the rental of a dwelling which indicates any limitation or discrimination because of sex or gender or an intention to make any such limitation or discrimination, in violation of 42 U.S.C. § 3604 (c) and 24 C.F.R. §§ 100.75 (c)(1) and (2);

    e.  Coercing, intimidating, threatening, or interfering with anyone in the exercise or enjoyment of, or on account of that person having exercised or enjoyed, any right granted or protected by the Fair Housing Act, in violation of 42 U.S.C. § 3617 and 24 C.F.R. §§ 100.400 (c)(1), (c)(2); and,

    **f.**  Imposing and enforcing an arbitrary, artificial, and unnecessary policy with a disproportionately adverse effect on women without any valid interest where there are less discriminatory alternatives, in violation of 42 U.S.C. §§ 3604 (a), (b), and 24 C.F.R. § 100.500.

**B.  SECOND CLAIM: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CAL. CIVIL CODE § 51 *et seq.***

40. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this

complaint.

41. Defendants injured Plaintiff by committing unlawful practices in violation of the Unruh Civil Rights Act, Cal. Civ. Code §§ 51-52, in connection with the ownership and operation of residential rental property and Mendez Property Company, LLC, which are both business establishments within the meaning of Cal. Civil Code § 51.

42. As a direct result of defendants' discriminatory housing practices, Ms. Ramos suffered emotional distress, including attendant physical symptoms. Defendants' misconduct also deprived Ms. Ramos of an important housing opportunity and caused her to suffer economic damages. Accordingly, Ms. Ramos is entitled to actual damages pursuant to Civil Code § 52 in an amount to be proven at trial.

43. Pursuant to Civil Code § 52, plaintiff Ms. Ramos is entitled to statutory damages of up to three times actual damages, but not less than $4,000.00 for each violation.

**C.  THIRD CLAIM:  VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT, GOV'T CODE §§ 12927, 12955 *et seq.***

37. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

38. Defendants injured plaintiff in violation of the California Fair Employment and Housing Act by committing the following discriminatory housing practices:

    a.   discriminating against or harassing any person because of sex or gender, in violation of Government Code §§ 12955 (a) and 12927 (c)(1);

    b.   making, printing, or publishing a notice or statement with respect to the rental of a housing accommodation that indicates a limitation or discrimination based on sex or gender or an intention to make that limitation or discrimination, in violation of Government Code § 12955 (c);

    c.   as a person subject to the Unruh Act, discriminating against any person on the basis of sex or gender, in violation of Government Code § 12955 (d);

**COMPLAINT FOR MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF; DEMAND FOR TRIAL BY JURY**

d. otherwise making available or denying a dwelling based on discrimination because of sex or gender, in violation of Government Code § 12955 (k);

e. Acting or failing to act with the effect of unlawfully discriminating based on sex or gender, in violation of Government Code § 12955.8.

## D.  FOURTH CLAIM: BREACH OF THE COVENANT OF QUIET USE AND ENJOYMENT

39. Plaintiff realleges and incorporates by reference all previous paragraphs of the complaint herein.

40. By depriving plaintiff of the full use and enjoyment of her rental dwelling, retaliating against plaintiff, and threatening plaintiff with adverse consequences, defendants breached the covenant of quiet enjoyment.

41.  Defendants knew or should have known that plaintiff would suffer anxiety or hardship as a result of defendants' breach of that covenant.

42. As a result of defendants' actions, plaintiff lost valuable property interests in the safe and quiet enjoyment of her home.

43. As a result of defendants' breach of the covenant of quiet enjoyment, plaintiff has suffered injuries as alleged herein and is entitled to damages in an amount according to proof.

## E. FIFTH CLAIM: CONSTRUCTIVE EVICTION

44. Plaintiff realleges and incorporates by reference all previous paragraphs of the complaint herein.

45. Defendants injured plaintiff by constructively evicting her from her dwelling.

46. By retaliating against plaintiff, serving plaintiff with multiple bad faith termination notices, and threatening plaintiff with adverse consequences based on her status as a survivor of intimate partner violence, defendants disturbed or interfered with plaintiff's possession of

**COMPLAINT FOR MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF; DEMAND FOR TRIAL BY JURY**

the rental dwelling.

47. Defendants' disturbance or interference with the plaintiff's possession of the rental dwelling rendered the dwelling unfit for the purposes for which it was leased.

48. Defendants' disturbance or interference with the plaintiff's possession of the rental dwelling permanently deprived plaintiff of the beneficial enjoyment or use of the rental dwelling.

49. As a result of defendant constructively evicting plaintiff from her dwelling, plaintiff has suffered injuries as alleged herein and is entitled to damages in an amount according to proof.

### F. SIXTH CLAIM: NEGLIGENCE

50. Plaintiff realleges and incorporates by reference all previous paragraphs of the complaint herein.

51. Defendants owed plaintiff a duty of care in the operation of the premises. Defendants negligently violated that duty by discriminating against plaintiff on account of her sex or gender. Defendants' violation of that duty was the result of negligence, including but not limited to:

    a. Defendants' negligent failure to hire persons who were familiar with the requirements of state and federal fair housing laws;

    b. Defendants' negligent failure to follow standard, recognized rental practices of the community; and/or,

    c. Defendants' negligent failure to exercise the ordinary and reasonable care and diligence required of a housing provider in the operation and management of the premises.

52. As a legal result of defendants' negligent conduct, plaintiff has suffered loss of important housing rights, violation of her civil rights, deprivation of the full use and enjoyment of her tenancy, violation of the covenant of quiet enjoyment, invasion of the private right of occupancy. Plaintiff also has suffered emotional distress and attendant bodily injury.

### PRAYER FOR RELIEF

Wherefore, plaintiff prays for entry of a judgment against each defendant which:

13

1. Declares that the discriminatory practices of the defendants, as set forth above, violate the Fair Housing Act, the California Fair Employment and Housing Act, the Unruh Civil Rights Act, and other applicable laws;

2.  Permanently enjoins defendants, their agents, employees, and successors, and all persons acting in concert or participating with them, from discriminating on the basis of sex or gender against any person in any aspect of the rental of a dwelling, including but not limited discriminating against tenants because they are victims of domestic violence, report incidents of domestic violence to authorities, or obtain restraining orders against abusers;

3. Orders defendants to take such affirmative steps as necessary to restore Ms. Ramos as nearly as practicable to the position she would have been in but for the discriminatory conduct and to take such affirmative steps as may be necessary to prevent such discrimination, harassment, and retaliation against other victims of domestic violence in the future;

4. Award compensatory, actual, and punitive damages to Ms. Ramos in an amount to be determined at trial;

5. Awards statutory damages of up to three times actual damages to Ms. Ramos pursuant to Cal. Civil Code §52.

6. Awards Ms. Ramos reasonable attorneys' fees and costs, pursuant to 42 U.S.C. §3613(c)(2), Cal. Gov. Code §12989.2,  Civil Code §52, and other applicable laws; and

7. Grant such other and further relief as this Court deems proper and just.


Dated:  September 8, 2022

Respectfully submitted,

BRANCART & BRANCART

By: */s/ Liza Cristol-Deman*
LIZA CRISTOL-DEMAN, ESQ.
Attorney for Plaintiff, DENISSE
RAMOS GONZALEZ

LEGAL AID SOCIETY OF SAN DIEGO, INC.

By: */s/ Hilary Schwartz*
HILARY SCHWARTZ, ESQ.
Attorney for Plaintiff, DENISSE RAMOS
GONZALEZ

**COMPLAINT FOR MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF; DEMAND FOR TRIAL BY JURY**